**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff,** | |
| v. | **CRIM. NO. 24-267 (RAM)** |
| [2] WALBENNY NUNEZ-SANTANA, | |
| **Defendant.** | |

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Walbenny Nunez-Santana's ("Defendant" or "Defendant Nunez") *Motion to Suppress* at Docket No. 45. For the reasons set forth below, the *Motion to Suppress* is **DENIED**.

**I.  PROCEDURAL BACKGROUND**

On August 8, 2024, a grand jury in the District of Puerto Rico returned a two-count *Indictment* charging Defendant Nunez and a co-defendant with conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), and 846; and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii). (Docket No. 13 at 1-2). Defendant entered a plea of not guilty before a magistrate judge on August 9, 2024. (Docket No. 16).

Defendant filed the *Motion to Suppress* on July 9, 2025. (Docket No. 45). On August 5, 2024, various officers with the

Puerto Rico Police Bureau (PRPB), Homeland Security Investigations (HSI), Drug Enforcement Administration (DEA), and United States Postal Inspection Service (USPIS) had conducted a traffic stop on a blue Toyota Rav-4 with the license plate KFW609, which was being driven by Defendant Nunez. Id. at 1-2. Defendant claims various Fourth Amendment violations. He first argues that his "subsequent detention, search, and seizure" exceeded the permissible scope of the traffic stop and was not supported by reasonable suspicion or probable cause. Id. at 2. He avers that the subsequent search of his vehicle was an illegal warrantless search made without probable cause, Defendant's consent, or an applicable exception to the Fourth Amendment's warrant requirement. Id. at 16. Additionally, Defendant claims that statements he made at the time of the traffic stop were products of unlawful detention and must be suppressed. Id. at 17. He also requests an evidentiary hearing. Id. at 22.

The Government filed a *Response* on August 1, 2025. (Docket No. 57). It argues that Defendant Nunez lacks standing to challenge the search, and that the *Motion to Suppress* should be denied without a hearing. Id. at 8. It avers that the initial stop of the Toyota Rav-4 was justified by reasonable suspicion, the search and seizure of items in the vehicle was permitted under the plain view doctrine and established probable cause for Defendant's arrest, and suppression is unwarranted. Id. at 14, 16, 18. Defendant filed

a *Reply* on August 11, 2025. (Docket No. 61). The Government filed

a *Sur-Reply* on August 26, 2025. (Docket No. 65).

## II.  FACTUAL BACKGROUND[1]

On the morning of August 5, 2024, Defendant Nunez picked up
co-defendant Angel Arroyo-Perrello ("Defendant Arroyo") in Cataño,
Puerto Rico, before driving him to a post office in Hato Rey.
(Docket No. 45 at 2). Defendant was driving a blue Toyota Rav-4
with the license plate KFW609; this car is registered to his wife.
(Docket No. 57 at 5). He did not enter the post office with
Defendant Arroyo, but instead visited a Starbucks and parked in a
grocery store parking lot. (Docket No. 45 at 2). After
approximately forty-five minutes, Defendant Nunez drove towards
the post office. Id.

Meanwhile, Defendant Arroyo had been the subject of a live
mail interdiction operation. (Docket No. 57 at 2). Around 11:10
AM, a group of PRPB, HSI, DEA, and USPIS agents observed Defendant
Arroyo arriving at the post office, after having been dropped off
by Defendant Nunez. Id. Defendant Arroyo was carrying a large brown
box, which he tried to ship via Priority Mail, paying cash. Id.
The package weighed approximately thirty-two pounds and 13.8
ounces, was addressed to "Michael Rivas, 13734 Kent State Ave,

---

[1] The following factual summary is taken from the *Motion to Suppress* (Docket
No. 45), the Government's *Response* (Docket No. 57), and the affidavit
accompanying the *Complaint* (Docket No. 1-1).

Orlando, Florida," and purportedly sent by "Luis Rivera, Ave Hostos, Cond. Hato Rey Centro, Apt. X 302, San Juan, PR 00918." Id. According to a USPIS database, the Orlando address had received four similar parcels from Puerto Rico since March 2024, all of which had been paid for in cash and had similar weights. Id. The sender and recipient names did not match the residents on file at their respective addresses. Id. USPIS agents approached Defendant Arroyo, who agreed to further questioning and provided written and verbal consent to search the package at approximately 11:27 AM. (Docket Nos. 1-1 at 3 and 57 at 3). Inside the package, the agents found two George Foreman grills containing bricks of a powdery white substance that later field-tested positive for approximately 2.1 kilograms of cocaine and had Tile Mate trackers embedded in them. (Docket Nos. 1-1 at 5 and 57 at 3). During the package's inspection, Defendant Arroyo spontaneously stated in Spanish that, "all this is mine, do what you have to do." (Docket No. 57 at 3). He was then arrested. Id.

As Defendant Nunez drove back towards the post office around 12:00 PM, he was followed by several police agents and eventually stopped by them; Defendant asserts the stop was due to an alleged lane change violation and close proximity to another vehicle, but disputes that a traffic violation occurred. (Docket No. 45 at 2). He was ordered to exit the car but refused. Id. at 3. Shortly

after, more law enforcement agents arrived and "within minutes," a plainclothes policeman approached Defendant Nunez and asked him again to exit the Toyota Rav-4. Id. The Government avers that this request was made after HSI agents saw Defendant Nunez attempting to destroy a receipt once the traffic stop began. (Docket No. 57 at 3). This receipt was later identified as a Walmart receipt timestamped "08/05/2024 08:52:13" for the purchase of various items, including two George Foreman grills and three Tile Mate trackers. Id. Defendant Nunez refused to exit the vehicle and requested clarification of the plainclothes officer's order; another armed officer approached Defendant Nunez, who stated that he would exit his car but first wanted an explanation. (Docket No. 45 at 3).

Defendant eventually exited the vehicle and was escorted to a PRPB patrol car. Id. at 3-4. His person and vehicle were then searched. Id. at 4. As shown in photographs included in the Government's *Response*, during the traffic stop and after Defendant Nunez exited the Toyota Rav-4, the responding officers observed gloves, plastic wrapping, tape, and a George Foreman grill instruction manual in plain view in the vehicle. (Docket No. 57 at 4-5). Defendant Nunez was taken to a PRPB police station, where he learned that Defendant Arroyo had also been detained. (Docket No. 45 at 4). He was then moved to a separate room for questioning.

Id. Three mobile phones were seized when Defendant Nunez was processed. (Docket No. 57 at 5).

### III. APPLICABLE LAW

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched." U.S. Const. amend. IV.

The exclusionary rule makes the Fourth Amendment enforceable by prohibiting the fruits of an unreasonable search or seizure from being admitted at trial. *See* United States v. Camacho, 661 F.3d 718, 724 (1st Cir. 2011); *see also* Wong Sun v. United States, 371 U.S. 471, 484-85 (1963) (discussing the "fruits" of unreasonable searches and seizures). When a defendant moves to suppress evidence under the Fourth Amendment, he has the burden of showing his Fourth Amendment rights were violated. *See* United States v. Rheault, 561 F.3d 55, 58-59 (1st Cir. 2009) (citing Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978)).

## IV. DISCUSSION

### A. The Court rejects Defendant's request for a hearing on the *Motion to Suppress*

There is "no presumptive right to an evidentiary hearing on a motion to suppress." United States v. Castro-Perez, Crim. No. 19-761, 2021 WL 488260, at *4 (D.P.R. Feb. 10, 2021) (quoting United States v. Cintron, 724 F.3d 32, 36 (1st Cir. 2013) (citation omitted)). "Generally, evidentiary hearings are only required 'if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record.'" Id. (quoting United States v. Francois, 715 F.3d 21, 32 (1st Cir. 2013)). A defendant "must show" that factual disputes exist that, if resolved in his favor, would entitle him to the requested relief. Id. (citation and internal quotation marks omitted). A defendant challenging a warrantless search must make a "sufficient threshold showing that no exception to the warrant requirement applied to the search" to obtain a hearing. Id. (placing the burden on defendants to allege sufficiently detailed facts to conclude the threshold showing is satisfied) (citations and internal quotation marks omitted). Moreover, Local Rule 7(h) squarely places the granting of oral argument within the discretion of the Court: it notes that the Court "may" grant oral argument and "[o]therwise, the motion will

be decided on the written record." L. Civ. R. 7(h); *see also* L. Crim. R. 112 (extending L. Civ. R. 7 to criminal cases).

Here, Defendant Nunez's factual allegations are not sufficiently detailed or specific to justify an evidentiary hearing. He disputes certain facts but fails to make the required threshold showing that "material facts are in doubt or dispute." Castro-Perez, 2021 WL 488260, at *4. The *Motion to Suppress* and *Reply* rely largely on conjecture, include no sworn statement in support of Defendant's claims, and fail to develop the type of factual dispute that is necessary for the Court to hold a hearing. (Docket Nos. 45 and 61); *see* United States v. Calderón, 77 F.3d 6, 9 (1st Cir. 1996) (a court can choose not to hold an evidentiary hearing when the defendant does not offer affidavits or other evidence in support of his motion to suppress). For example, Defendant Nunez asserts in his motion, without providing a sowrn statement, that the grill manual, shipping materials, and gloves were in the trunk of the Toyota Rav-4 (and thus presumably not in plain view), but this is contradicted by the photographs provided by the Government. (Docket No. 57 at 4-5). Accordingly, the Court will not hold an evidentiary hearing on the *Motion to Suppress*.

**B. The traffic stop did not violate the Fourth Amendment**

As stated previously, the Fourth Amendment prohibits unreasonable searches and seizures. Terry v. Ohio, 392 U.S. 1, 9

(1968). "Temporary detention of individuals during the stop of an automobile by police, even if only for a brief period and for a limited purpose, constitutes a 'seizure'" for Fourth Amendment purposes. Whren v. United States, 517 U.S. 806, 809 (1996) (citations omitted). However, a traffic stop does not violate the detained individuals' Fourth Amendment rights if it "is supported by the officer's observation of a traffic violation," or if there is a "reasonable and articulable suspicion of criminal activity." United States v. Carr, 534 F.Supp. 3d 143, 147 (D. Me. 2021) (citing United States v. Chaney, 584 F.3d 20, 24 (1st Cir. 2009); quoting United States v. Chhien, 266 F.3d 1, 6 (1st Cir. 2001)).

> i. *There are insufficient facts to determine whether there was probable cause to stop Defendant for a traffic violation*

It is generally "reasonable" to stop an automobile "where the police have probable cause to believe that a traffic violation has occurred." Whren, 517 U.S. at 809 (citation omitted). This is true regardless of the actual, subjective motivations of the individual officers conducting the traffic stop. Id. at 813. Here, there is insufficient information in the parties' motions to determine if there was probable cause to stop Defendant Nunez for a traffic violation. The Government contends Defendant Nunez was stopped for a traffic violation, and while the *Motion to Suppress* disputes that any traffic violation actually occurred, it does state that

Defendant Nunez was allegedly detained for "a lane change violation and alleged close proximity to another vehicle," the lack of elaboration means that the Court cannot determine if the traffic stop was justified under <u>Whren</u>. *See* 517 U.S. at 809; (Docket Nos. 45 at 2 and 57). The affidavit accompanying the *Complaint* is silent on on the matter. (Docket No. 1-1). The Court thus moves on to consider if the stop was lawful because there was "reasonable and articulable suspicion of criminal activity." <u>Carr</u>, 534 F.Supp. 3d at 147.

> ii.  *The traffic stop was lawful because there was reasonable suspicion to initiate the stop and its scope and duration were appropriate*

### 1. There was reasonable suspicion for the stop

A traffic stop does not violate the detainee's constitutional rights if the responding officer had a "reasonable and articulable suspicion of criminal activity." <u>Carr</u>, 534 F.Supp. 3d at 147. These stops are treated as "analogous" to <u>Terry</u> stops. <u>United States v. Campbell</u>, 741 F.3d 251, 260 (1st Cir. 2013) (citing <u>Berkemer v. McCarty</u>, 468 U.S. 420, 439 (1984)); *see* <u>United States v. Dapolito</u>, 713 F.3d 141, 147 (1st Cir. 2013) (citation omitted). Like <u>Terry</u> stops, warrantless traffic stops satisfy the Fourth Amendment's reasonableness requirement if "police officers have a reasonable suspicion of wrongdoing—a suspicion that finds expression in specific, articulable reasons for believing that a person may be

connected to the commission of a particular crime." Campbell, 741 F.3d at 261 (quoting United States v. Lee, 317 F.3d 26, 31 (1st Cir. 2003)).

Reasonable suspicion must be grounded in "a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Pontoo, 666 F.3d 20, 27-28 (1st Cir. 2011) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)). This standard "'defies precise definition' and 'must be determined case by case,'" but is fundamentally a commonsense matter. Dapolito, 713 F.3d at 148 (citations and internal quotation marks omitted). It makes "due allowance for police officers to draw upon their experience and arrive at inferences and deductions that may well elude an untrained person." United States v. Trinidad-Nova, 731 F.Supp. 3d 273, 280 (D.P.R. 2024) (internal quotation marks and citation omitted). "The particularity requirement demands that the finding be 'grounded in specific and articulable facts.'" Id. (quoting United States v. Hensley, 469 U.S. 221, 229 (1985)). The "objective basis" of a stop is determined "through the lens of a reasonable police officer," not an officer's subjective view. Dapolito, 713 F.3d at 148 (citation omitted); see Trinidad-Nova, 731 F.Supp. 3d at 280. When reaching its decision, a court should consider the "totality

of the circumstances surrounding an encounter." <u>United States v.
Romain</u>, 393 F.3d 63, 75 (1st Cir. 2004) (citation omitted).

Here, law enforcement had reasonable suspicion to stop
Defendant Nunez. He had dropped off Defendant Arroyo and the brown
package at the post office. (Docket No. 57 at 2). Within minutes,
Defendant Arroyo had encountered law enforcement and provided
consent for them to search the package. <u>Id.</u> The package contained
two George Foremen grills that each held a large brick of a white
powdery substance embedded with a tracking tile; Defendant Arroyo
spontaneously admitted the contents were his. <u>Id.</u> at 3. The
officers observing the bricks could "draw upon their experience"
and infer that the package likely contained drugs. <u>Trinidad-Nova</u>,
731 F.Supp. 3d at 280. At the time the traffic stop was initiated,
law enforcement was aware that Defendant Nunez had transported
Defendant Arroyo and the package to the post office, Defendant
Nunez had remained in the area, and the package likely contained
a significant amount of drugs. The totality of the circumstances
surrounding the stop clearly establishes "specific, articulable
reasons for believing that" Defendant Nunez may have been involved
in criminal activity involving controlled substances. <u>Campbell</u>,
741 F.3d at 261; <u>Romain</u>, 393 F.3d at 75. As a result, the traffic
stop was valid at its conception and did not violate the Fourth

Amendment as reasonable suspicion existed to stop Defendant Nunez. *See* Carr, 534 F.Supp. 3d at 147.

### 2. The scope and duration of the traffic stop were appropriate

The Supreme Court has repeatedly held that an otherwise lawful traffic stop "may become unlawful if it is prolonged beyond the time reasonably required to complete the stop's purpose." United States v. Javier-Jazmin, Crim. No. 17-126, 2019 WL 13216570, at *9 (D.P.R. Aug. 16, 2019) (citing Rodriguez v. United States, 135 S. Ct. 1609, 1614-15 (2015)). The reasonableness of a prolonged stop's duration is determined by "whether the officers were 'diligently pursu[ing] a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.'" Id. (quoting United States v. Rasberry, 882 F.3d 241, 248 (1st Cir. 2018) (quoting United States v. Sharpe, 470 U.S. 675, 686 (1985))). A court must determine if there was reasonable suspicion to prolong the stop, and if so, whether the duration exceeded "the time necessary for officers to confirm or dispel their suspicions." Id. at *10.

As discussed above, leading up to Defendant Nunez's stop, law enforcement had intercepted a parcel containing two bricks of cocaine carried by Defendant Nunez's passenger, Defendant Arroyo, and observed Defendant Nunez remaining in the area. When Defendant Nunez was initially stopped by law enforcement, he was seen tearing

up a piece of paper. (Docket Nos. 1-1 at 6 and 57 at 3). This behavior was objectively strange and could signal Defendant Nunez was trying to destroy evidence before law enforcement approached, creating new reasonable suspicion to prolong the stop by asking Defendant Nunez to exit the vehicle and waiting for additional law enforcement officers to arrive. *See* <u>Javier-Jasmin</u>, 2019 WL 13216570, at *10.

After Defendant Nunez exited the Toyota Rav-4, the responding officers looked into the Toyota Rav-4 and saw gloves, packaging material, and a George Foreman grill instruction manual in plain view inside the vehicle, further tying it (and by extension, Defendant Nunez) to the package of cocaine. (Docket Nos. 1-1 at 6-9 and 57 at 4-5). It is unclear how much time passed during the stop before Defendant Nunez was asked to leave the vehicle, additional law enforcement arrived, or the items in the vehicle were discovered. Similarly, the Court has no clear sense of how long the entire stop lasted as Defendant's *Motion to Suppress* only mentions "a period of time" and "within minutes." (Docket No. 45 at 3). Both parties' briefings suggest that stop unfolded rapidly (*e.g.*, "within minutes"), and in any event, the extension of the stop was quickly validated when law enforcement observed Defendant Nunez tearing up the paper and saw packing materials and grill

instruction manual within the Toyota Rav-4. *See* Javier-Jasmin, 2019 WL 13216570, at *10.

The Court thus concludes that the traffic stop remained lawful as it was not prolonged beyond the time necessary to achieve the stop's purpose. *See* United States v. McCarthy, 77 F.3d 522, 530 (1st Cir. 1996) (noting that there is no set time at which a lawful Terry stop transforms into an unreasonable seizure as this determination is a fact-intensive inquiry). To the extent the stop was prolonged, it was rooted in reasonable suspicion and reasonable in scope and duration and thus permitted under the Fourth Amendment. *See* Javier-Jasmin, 2019 WL 13216570, at *10.

**C. Defendant lacks standing to challenge the search of the Toyota Rav-4**

As a threshold matter, the person claiming the protection of the Fourth Amendment must demonstrate a legitimate expectation of privacy in the area searched or the item seized. *See* Rakas, 439 U.S. at 143. The burden of establishing this expectation of privacy is often referred to as Fourth Amendment standing, and it is a burden that falls squarely on the defendant. *See* Rawlings v. Kentucky, 448 U.S. 98, 105 (1980); Alderman v. United States, 394 U.S. 165, 174 (1969) ("Fourth Amendment rights are personal rights which...may not be vicariously asserted."). "[T]he defendant must show both a subjective expectation of privacy and that society accepts that expectation as objectively reasonable." United States

v. Mancini, 8 F.3d 104, 107 (1st Cir. 1993). Until the defendant

does so, whether a violation of the Fourth Amendment occurred is

not legitimately in issue. *See* United States v. Aguirre, 839 F.2d

854, 856 (1st Cir. 1988).

In Aguirre, the First Circuit established a two-tier test to

establish the existence of a reasonable expectation of privacy.

First, courts must determine "whether or not the individual thought

of the place (or the article) as a private one, and treated it as

such." Id. at 857. The following factors are relevant:

> ownership, possession, and/or control; historical
> use of the property searched or the thing seized;
> ability to regulate access; the totality of the
> surrounding circumstances; the existence or
> nonexistence of a subjective anticipation of
> privacy; and the objective reasonableness of such
> an expectancy under  facts of a given case.

Id. at 856-57. "In the context of a vehicle search, a defendant

must show 'a property [or] a possessory interest in the automobile'

in order to establish a reasonable expectation of privacy." United

States v. Almeida, 748 F.3d 41, 47 (1st Cir. 2014) (quoting United

States v. Symonevich, 688 F.3d 12, 19 (1st Cir. 2012)). *See also*

Terrence Byrd v. United States, 584 U.S. 395, 400 (2018) ("One who

owns and possesses a car...almost always has a reasonable

expectation of privacy in it."). While ownership is important, it

is "not dispositive," and courts must consider "the totality of

the circumstances." United States v. Gómez-Vega, 519 F.Supp. 2d

241, 256 (D.P.R. 2007) (citations omitted); *see also* <u>Oliver v. United States</u>, 466 U.S. 170, 177 (1984) ("[n]o single factor determines whether an individual" has an expectation of privacy protected by the Fourth Amendment). "[A]ny precautions taken to exclude others or otherwise maintain a privacy interest will heighten the legitimate expectation of privacy in the protected area." <u>Gómez-Vega</u>, 519 F.Supp 2d at 256 (quoting <u>United States v. One 1977 Mercedes Benz</u>, 708 F.2d 444, 449 (9th Cir. 1983)).

If the defendant meets this first step, courts must "then look to whether or not the individual's expectation of confidentiality was justifiable under the attendant circumstances." <u>Id.</u> at 857. The defendant's satisfaction of both steps establishes standing for Fourth Amendment purposes.

Defendant Nunez lacks standing to challenge the search of his wife's car. *See* <u>Aguirre</u>, 839 F.2d at 856-57. Defendant Nunez did not submit a sworn statement stating that the Toyota Rav-4 was registered to his wife and that he had an interest in the car, control over the car, or his wife's permission to drive it. *Cf* <u>United States v. Zimmerman</u>, 480 F.Supp. 3d 446, 452 (E.D.N.Y. 2020) (finding a defendant had a reasonable expectation of privacy to contest the search of a vehicle when he had submitted an affidavit from his girlfriend stating she had given the defendant permission to drive it on the night of his arrest and that he generally had

permission to use it). The *Motion to Suppress* and *Reply* only state that the vehicle was registered to Defendant's wife and that he had her permission to use it; Defendant Nunez's accompanying unsworn statement merely states his support of the motion. (Docket Nos. 45 at 2; 45-1 and 63 at 2).

Viewing Defendant Nunez's submissions, the Court concludes that he has not established a property or possessory interest in the Toyota Rav-4 that would give him a reasonable expectation of privacy in the vehicle. *See* Almeida, 748 F.3d at 47. Defendant Nunez thus cannot challenge the search of the Toyota Rav-4 or seek suppression of any evidence obtained from the search. However, as discussed below, even if Defendant Nunez had standing to challenge the search of the Toyota Rav-4, the evidence obtained from the vehicle should not be suppressed.

### D. **The seizure of items plainly visible inside the Toyota Rav-4 did not violate the Fourth Amendment**

Warrantless searches are presumptively unreasonable "unless an exception to the warrant requirement applies." United States v. McGregor, 650 F.3d 813, 820 (1st Cir. 2011). One such exception is the so-called "automobile exception," which permits "warrantless searches of motor vehicles on account of the exigencies attendant to ready mobility and the reduced expectations of privacy that people have in their vehicles." United States v. Herrera-Castillo, Crim. No. 16-201, 2017 WL 87020, at *6 (D.P.R. Jan. 10, 2017)

(citing California v. Carney, 471 U.S. 386, 392 (1985)). Under the automobile exception, police may conduct "a warrantless search of a vehicle if there is probable cause to believe that evidence of a crime or contraband will be found in the vehicle." United States v. Hernandez-Mieses, 931 F.3d 134, 145 (1st Cir. 2019) (citing United States v. Kennedy, 881 F.3d 14, 18 (1st Cir. 2018)).

"[P]robable cause exists when an officer, acting upon apparently trustworthy information, reasonably can conclude that a crime has been...committed and that the suspect is implicated in its commission." United States v. Flores, 888 F.3d 537, 543 (1st Cir. 2018) (quoting Morelli v. Webster, 552 F.3d 12, 21 (1st Cir. 2009)). It is assessed by evaluating the totality of the circumstances known to the officers at the time of the arrest. French v. Merrill, 15 F.4th 116, 125 (1st Cir. 2021) (citing Flores, 888 F.3d at 544). Probable cause can be determined based on the "collective knowledge and information of all the officers involved." United States v. Paradis, 802 F.2d 553, 557 (1st Cir. 1986) (citing United States v. Rose, 731 F.2d 1337, 1342-43 (8th Cir.), cert. denied, 469 U.S. 931 (1984)). Moreover, probable cause is a "fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such

activity." Id. at 243-44. In other words, probable cause "is not a high bar." Kaley v. United States, 571 U.S. 320, 338 (2014). The Government bears the burden of establishing probable cause. *See* United States v. Bizier, 111 F.3d 214, 217 (1st Cir. 1997) (citations omitted).

Here, Defendant Nunez had been stopped by police after he dropped off Defendant Arroyo at the post office with a package that was found to contain two George Foreman grills and two bricks of cocaine with tracking tiles embedded in them. (Docket No. 57 at 3). As the stop began, he was observed tearing up a piece of paper, leading officers to believe he may have been trying to destroy evidence. *See* (Docket No. 1-1 at 6-7). And as the officers looked into the Toyota Rav-4, the items they saw inside— gloves, a George Foreman instruction manual, packing tape, a plastic bag, and plastic wrap— were clearly connected to the package Defendant Arroyo was trying to mail at the time of his arrest. (Docket No. 57 at 4-5). Given the totality of the circumstances, including the presence of evidence inside the Toyota Rav-4, an officer could reasonably conclude that Defendant Nunez was involved in efforts to pack and ship drugs at the post office. *See* French, 15 F.4th at 125; Flores, 888 F.3d at 543. Law enforcement thus had probable cause to seize the items in within the Toyota Rav-4 under the automobile exception, even though they did not obtain a warrant.

Defendant argues that the automobile exception is inapplicable due to an absence of probable cause, and in any event, "if police have control of the vehicle and there are no exigent circumstances beyond the car's inherent mobility, obtaining a warrant is the safer course." (Docket No. 61 at 11). However, Defendant Nunez cites to no cases in support of this proposition, and the Court is unaware of any binding caselaw *requiring* law enforcement to obtain a warrant under similar circumstances. The First Circuit has stated that "an impressive convoy of [automobile exception] cases holds that if the requisite probable cause exists it matters not whether...agents had time to obtain a warrant first." United States v. Polanco, 634 F.3d 39, 43 (1st Cir. 2011) (collecting cases). As there was probable cause to believe that evidence of drug trafficking would be found in the Toyota Rav-4, the automobile exception permits law enforcement's search of the vehicle. *See* Hernandez-Mieses, 931 F.3d at 145.

## E. Defendant's other arguments are unsuccessful

Defendant Nunez further argues that any statements he made must be suppressed under the exclusionary rule as products of an illegal stop. (Docket No. 45 at 17). However, as discussed above, Defendant was not subject to an illegal stop and his Fourth Amendment rights were not violated. Thus, any statements he made cannot be construed as fruit of the poisonous tree that would

require exclusion. *See* <u>Camacho</u>, 661 F.3d at 724. To the extent the *Reply* argues that Defendant Nunez's arrest is also fruit of the poisonous tree and lacked probable cause, the Court rejects this as well. (Docket No. 61 at 14-15).

### V.    CONCLUSION

In consideration of the above findings, the Court **DENIES** the *Motion to Suppress* at Docket No. 45.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 1st day of October 2025.

S/RAÚL M. ARIAS-MARXUACH
UNITED STATES DISTRICT JUDGE